1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | No.  1:19-cr-00173-NONE |
| 12                  Plaintiff, | |
| 13       v. | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| 14  JOSHUA MARQUEZ, | |
| 15                  Defendant. | (Doc. No. 58) |
| 16 | |
| 17 | |

18          Pending before the court is defendant Joshua Marquez's motion for compassionate release

19  pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical

20  condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19")

21  pandemic.  (Doc. No. 58.)[1]  For the reasons explained below, defendant's motion will be denied.

22                              **BACKGROUND**

23          In 2013, defendant entered a plea of guilty to being a felon in possession of a firearm in

24  violation of 18 U.S.C. § 922(g)(1) and was thereafter sentenced to a term of imprisonment of 84

25  months with a 36-month term of supervised release to follow.  (Case No. 1:12-cr-00223, Doc. No.

26  26 at 2–3.)  After serving that sentence, defendant was released from prison and while on

27

28  _____

[1]  Unless otherwise indicated, all citations to the record refer to case number 1:19-cr-00173.

1

1  supervised release from his original federal criminal case, in 2019, defendant was again arrested

2  on the charge of being a convicted felon in possession of a firearm and was indicted on that

3  charge.  (Doc. No. 50 (Presentence Report) at 2.)  On December 13, 2019, defendant entered a

4  plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

5  (Doc. Nos. 46; 47 at 2.)  In this, his new criminal case, it was determined that under the U.S.

6  Sentencing Guidelines defendant's adjusted offense level was 23 and his criminal history placed

7  him in category VI, resulting in an advisory sentencing guideline range calling for of

8  imprisonment between 92 and 115 months.  (Doc. No. 50 (Presentence Report) at 7.)  The U.S.

9  Probation Office recommended a low-end guideline sentence of 92-months.  (*Id.*)  On December

10  16, 2019, the court followed that recommendation and sentenced defendant to a term of

11  imprisonment of 92 months with 36 month term of supervised release to follow.  (Doc. No. 52 at

12  2–3.)  That sentence imposed in this case was to run concurrently with any sentence imposed in

13  defendant's original case in connection with his violation of the terms of his supervised release in

14  his earlier case.  (*Id.* at 2.)  However, the government moved to dismiss the supervised release

15  violation petition and the court granted that dismissal motion.  (Case No. 1:12-cr-00223, Doc.

16  Nos. 48, 52.)

17      Defendant is currently serving his re month sentence at the U.S. Bureau of Prisons'

18  ("BOP") Mendota Federal Correctional Institute in Mendota, California ("FCI Mendota").  (Doc.

19  No. 58 at 2.)  On July 15, 2020, through counsel, defendant filed the pending motion for

20  compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 58.)  On August 3,

21  2020, the government filed its opposition to the motion, and on August 6, 2020, defendant filed

22  his reply thereto.  (Doc. Nos. 67, 68.)

23                                   **LEGAL STANDARD**

24      A court generally "may not modify a term of imprisonment once it has been imposed."  18

25  U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

26  conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

27  be modified by a district court except in limited circumstances.").  Those limited circumstances

28  include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),

motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)

(2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for

compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the

FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted
> all administrative rights to appeal a failure of the [BOP] to bring a
> motion on the defendant's behalf[2] or the lapse of 30 days from the
> receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may
> impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original
> term of imprisonment), after considering the factors set forth in [18
> U.S.C. §] 3553(a) to the extent that they are applicable, if it finds
> that –
>
> (i)     extraordinary  and  compelling  reasons  warrant  such  a
>         reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30
>         years in prison, pursuant to a sentence imposed under section
>         3559(c), for the offense or offenses for which the defendant
>         is currently imprisoned, and a determination has been made
>         by the Director of the Bureau of Prisons that the defendant is
>         not a danger to the safety of any other person or the
>         community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).  If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed."  *Id.*  "Appeal to the General Counsel is the final administrative appeal."  *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights."  *See* 18 U.S.C. § 3582(c)(1)(A).

[3]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for

The applicable policy statement with respect to compassionate release in the U.S.

Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also*

*United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar.

31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary

and compelling reasons," even though that policy statement was issued before Congress passed

the FSA and authorized defendants to file compassionate release motions).  However, a large and

growing number of district courts across the country have concluded that because the Sentencing

Commission has not amended the Guidelines since the enactment of the FSA, courts are not

limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether

extraordinary and compelling circumstances are presented justifying a reduction of sentence

under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL

2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F.

Supp. 3d 674, 681 (N.D. Cal. 2019).

--------

which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A.    Administrative Exhaustion

On May 11, 2020, defendant submitted an administrative request to the Warden at FCI Mendota requesting to be released to home confinement pursuant to the "CARES Act." (Doc. No. 67-1 at 9.) The government takes issue with this request, because it did not seek defendant's compassionate release pursuant to § 3582 and thus, the government argues, BOP could not have

1    properly responded to defendant's request.  (Doc. No. 67 at 10.)  Apparently conceding to the

2    government's argument, defendant in reply argues that the court should waive the exhaustion

3    requirement under the circumstances of the present case.  (Doc. No. 68 at 2–3.)

4         As the COVID-19 virus continues to spread, district courts across the country have been

5    presented with the question of whether § 3582(c)(1)(A)'s administrative exhaustion provision for

6    defendants seeking to bring compassionate release motions in federal court can be excused.

7    Some court have found that it can be, *see, e.g.*, *United States v. Connell*, ___F. Supp. 3d___, 2020

8    WL 2315858 (N.D. Cal. May 8, 2020), while others have held that the exhaustion requirement is

9    jurisdictional and cannot be excused under any circumstances, *see, e.g.*, *United States v. Meron*,

10   No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020).  For the purposes of

11   resolving the pending motion, however, this court need not resolve this issue.  As discussed

12   below, the court finds that the pending motion for compassionate release fails to establish

13   "extraordinary and compelling reasons" warranting defendant Marquez's release.

14   **B.      Extraordinary and Compelling Reasons**

15        "Extraordinary and compelling reasons" warranting compassionate release may exist

16   based on a defendant's medical conditions, age and other related factors, family circumstances, or

17   "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

18   reasons" was included in the policy statement at a time when only BOP could bring a

19   compassionate release motion, courts have agreed that it may be relied upon by defendants

20   bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

21   JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

22        Thus, the medical condition of a defendant may warrant compassionate release where he

23   or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

24   trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

25   specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

26   examples of terminal illnesses that may warrant a compassionate release "include metastatic

27   solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

28   dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

6

condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[5]  In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

/////

---

[5] Here, however, because defendant Marquez is only 36 years old (Doc. No. 50 at 12), his age and age-related factors do not play a role in consideration of his pending motion.

1    Here, defendant Marquez argues that extraordinary and compelling reasons warranting his

2    compassionate release exist due to his medical condition and the risk allegedly posed to him by

3    the COVID-19 virus.  Defendant is only 36 years old.  (*See* Doc. No. 50 (Presentence Report) at

4    12.)  Thus, to qualify for compassionate release, defendant must demonstrate that he is suffering

5    from some serious medical condition "that substantially diminishes [his] ability . . . to provide

6    self-care" in FCI Mendota and the medical condition is one "from which he . . . is not expected to

7    recover."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  More specifically, defendant argues that his

8    condition of Hepatitis C and its associated risks with COVID-19 satisfy this policy statement.

9    (Doc. No. 58 at 9–11.)  At the time of sentencing, "defendant reported suffering from Hepatitis

10   C."  (Doc. No. 50 (Presentence Report) at 26.)  Defendant's most recent medical records show

11   that he currently suffers from chronic viral Hepatitis C.  (Doc. No. 62 at 4 (sealed).)  Several

12   courts have found that Hepatitis C, as a general matter, damages the liver and weakens the

13   immune system, which in turn may establish "extraordinary and compelling reasons" justifying

14   compassionate release amid the COVID-19 pandemic.  *See, e.g.*, *United States v. Stephenson*, No.

15   3:05-CR-00511, 2020 WL 2566760, at *6 (S.D. Iowa May 21, 2020); *United States v. Ludwig*,

16   No. 2:14-cr-00043-KJM, 2020 WL 4547347, at *2 (E.D. Cal. Aug. 6, 2020) (involving a

17   defendant with a history of Hepatitis B and C); *but see United States v. Abeyta*, No. 14-cr-00029-

18   PAB-01, 2020 WL 4593216, at *3 (D. Colo. Aug. 11, 2020) (denying compassionate release on

19   the basis of Hepatitis C where there was no evidence before the court that the defendant was

20   actually immunocompromised or had sustained liver damage).  This is because the U.S. Centers

21   for Disease and Prevention ("CDC") identifies individuals with weakened immune systems as "at

22   increased risk of severe illness from COVID-19," while individuals with liver disease "might be

23   at increased risk for severe illness."  *See Coronavirus Disease 2019 (COVID-19): People Who*

24   *Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

25   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-

26   risk.html (last visited Oct. 7, 2020).

27   Given defendant Marquez's documented history with Hepatitis C, the court will err on the

28   side of caution in concluding that he is at higher risk for suffering a severe illness were he to

8

1   contract COVID-19 because he may be immunocompromised and have liver damage.  Therefore,

2   the court concludes that defendant has and is "suffering from a serious physical . . . medical

3   condition . . . from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1

4   (A)(ii).[6]  Still, to qualify for compassionate release under the circumstances presented here,

5   defendant must demonstrate that his medical condition "substantially diminishes [his] ability . . .

6   to provide self-care" in FCI Mendota.  *See id.*

7          Defendant fails to carry his burden in this regard.  The decision in *Ludwig* is instructive

8   here.  There, the court found that a defendant who suffered from Hepatitis B, Hepatitis C, and

9   documented liver damage demonstrated "extraordinary and compelling reasons" because, in

10  significant part, the conditions at BOP's Beaumont Federal Correctional Institute (Low) did not

11  allow him to take the precautions required for his medical conditions.  *Ludwig*, 2020 WL

12  4547347, at *5–6.  The court noted that the number of COVID-19 cases at Beaumont was steadily

13  increasing and the prison did not allow for adequate physical distancing, only providing "2.5 feet"

14  between inmates.  *Id.*  Here, by contrast, it appears that FCI Mendota has adequately managed the

15  outbreak of COVID-19.  FCI Mendota has recently reported that six inmates and eight staff

16  members contracted COVID-19 but recovered, with no reported deaths.[7]  *See COVID-19*,

17  FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020).

18  Currently, three inmates and one staff member at that prison are reported as having active cases of

19  the virus.[8]  *Id.*  Moreover, aside from counsel's conclusory statements addressing the subject,

20  defendant himself does not describe the conditions of his confinement in FCI Mendota or claim

21  that they are such that it hinders his ability to provide self-care with respect to his Hepatitis C

22

23  [6]  The court rejects defendant's argument that being a Latino individual is a qualifying medical
    condition for the purposes of compassionate release.  (Doc. No. 58 at 13.)

24

25  [7]  FCI Mendota houses 790 inmates.  *FCI Mendota*, FEDERAL BUREAU OF PRISONS,
    https://www.bop.gov/locations/institutions/men/ (last visited Oct. 7, 2020).

26

27  [8]  The undersigned does not necessarily accept these reported numbers at face value given the
    manner in which the CDC guidelines apparently allow for individuals to be counted as recovered
28  from the virus without confirming test results.  However, there is also no evidence before the
    court contradicting those reported numbers.

9

1    condition.  (*See* Doc. No. 58 at 12 (arguing defendant cannot take "extra precautions to maintain

2    hygiene, a sterile environment, and physically from others"—but providing no evidentiary

3    support for that contention).)  Moreover, based upon the limited BOP medical records submitted

4    in support of the pending motion, it does not appear that there is evidence that defendant is

5    suffering or receiving inadequate care for his Hepatitis C condition.  (*See generally* Doc. No. 62

6    (sealed).)  As this court has previously noted, "[c]hronic conditions that can be managed in prison

7    are not a sufficient basis for compassionate release."  *United States v. Ayon-Nunez*, No. 1:16-cr-

8    00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020).

9            Based on the evidence presented in this case, the court cannot conclude that defendant is

10   significantly hindered in providing self-care with respect to his medical condition while he is

11   incarcerated at FCI Mendota.  *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the

12   initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

13   Therefore, the pending motion fails to demonstrate extraordinary and compelling reasons

14   justifying defendant's compassionate release.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

15   **C.      Consistency With the § 3553(a) Factors**

16           Because the pending motion fails to establish extraordinary and compelling reasons

17   justifying compassionate release in this case, the court need not address whether any reduction in

18   defendant's sentence would be consistent with consideration of the sentencing factors set forth at

19   18 U.S.C. § 3553(a).  Nonetheless, the court would note that defendant Marquez was sentenced to

20   his 92-month term of imprisonment approximately ten months ago on December 16, 2019. (Doc.

21   No. 51.)  As of the date of this order, defendant Marquez has served only about 14 months of that

22   sentence.  Even with the award of maximum good time credits, he has served only a slight

23   percentage of the sentence that was imposed in this case relatively recently.  Such circumstances

24   militate against the granting of his motion as well.  *See United States v. Shayota*, No. 1:15-cr-

25   00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the

26   sentence remaining is an additional factor to consider in any compassionate release analysis, with

27   a longer remaining sentence weighing against granting any such motion." (citation omitted)).

28   /////

                                                    10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. No. 58) is denied.

IT IS SO ORDERED.

Dated:   **October 12, 2020**

_____
UNITED STATES DISTRICT JUDGE

11